## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**RONNIE D. REDDEN,**

**Plaintiff,**

**v.**                                                   **Civil Action No. 1:18cv187**
                                                        **(Judge Kleeh)**

**JEFF SANDY, Dep't. Military Affairs;**
**BETSY JIVIDEN, Commissioner, Dep't.**
**of Corrections; MICHEAL MARTIN,**
**Warden; WEXFORD (MEDICAL)**
**HEALTH SOURCES, INC., Pitt., PA;**
**KEVIN C. HALLORAN; G. NORMAN**
**MCCANN; DR. PAUL; DR. PROCTOR;**
**and KIMBERLY PATTEN, Health**
**Administrator,**

**Defendants.[1]**

## REPORT AND RECOMMENDATION

## I. Procedural History

The *pro se* Plaintiff, an inmate at Huttonsville Correctional Center ("HCC") in

Huttonsville, West Virginia, filed this civil rights action pursuant to 42 U.S.C. § 1983 on October

3, 2018. ECF No. 1. Along with his complaint, he filed a motion to proceed as a pauper with

supporting documents; a motion for appointed counsel, and a motion to exceed the page limits,

titled Motion to File Extended Papers. ECF Nos. 2, 3, 4, 5, 6. On October 5, 2018, Plaintiff filed a

motion for leave to file additional documents in support of claims. ECF No. 8. By Order entered

October 10, 2018, Plaintiff's motions to exceed the page limits were granted and the Clerk of Court

was directed to redocket the "additional documents" filed as attachments to the motions as

---

[1] Defendants have provided corrected and/or completed names to correct Plaintiff's misspelling of and/or failure to provide their complete names in the amended complaint: "Micheal Martin" is Michael Martin; "Dr. Paul" is Dina Paul, M.D.; "Dr. Proctor" is David Proctor, D.O.; and "Kimberly Patten" is Kimberly Paton.  The Clerk will be directed to correct the docket. These defendants will be referred to herein by the corrected versions of their names.

attachments to the complaint. ECF No. 10. By separate Orders entered the same day, Plaintiff was granted permission to proceed *in forma pauperis* and an initial partial filing fee was waived, although he was assessed the full fee; and his motion for appointed counsel was denied. ECF No. 11, 12. On October 25, 2018, Plaintiff filed a Motion to File "Additional Grounds and Issues;" it was construed as a motion to amend the complaint and granted by Order entered October 30, 2018. ECF Nos. 14, 15.  On November 13, 2018, Plaintiff filed his Amended Complaint along with four motions: to file "extended papers;" for an injunction; for appointed counsel; and a motion to seal a witness list. ECF Nos. 17, 18, 19, 20, 21. By separate Orders entered on November 15, 2018, Plaintiff's third motion for excess pages was granted; his second motion for appointed counsel was denied; and his motion to seal was denied. ECF Nos. 22, 23, 24.

By Miscellaneous Case Order entered on November 30, 2018, this case was reassigned from Senior District Judge Irene M. Keeley to District Judge Thomas S. Kleeh. ECF No. 26. On April 9, 2019, Plaintiff filed a "Motion to Compel to Rule [sic]." ECF No. 28. By Order entered April 10, 2019, Plaintiff's Motion for Injunction and Motion to Compel to Rule were construed as motions for expedited review and denied as premature. ECF No. 29. On April 10, 2019, the undersigned conducted a preliminary review of the file and determined that summary dismissal was not warranted; accordingly, an Order to Answer was entered and summonses were issued for the named defendants. ECF No. 30.

On May 3, 2019, Defendants G. Norman McCann ("McCann"), Kimberly Paton ("Paton"), and Wexford (Medical) Health Sources, Inc. ("Wexford) filed a Motion to Dismiss with a memorandum in support.[2]  ECF Nos. 34, 35. Because Plaintiff was proceeding *pro se*, on May 7, 2019, a <u>Roseboro</u> Notice issued. ECF No. 39. By Order entered May 8, 2019, defense counsel for

---

[2] McCann, Wexford, and Paton each also filed corporate disclosures.  ECF Nos. 36, 37, 38.

Wexford was directed to provide a current address for Defendant Halloran to permit service to be effectuated on Halloran. ECF No. 41.

On May 10, 2019, Defendants Betsy Jividen ("Jividen"), Michael Martin ("Martin"), and Jeff Sandy ("Sandy") filed a Motion to Dismiss with a memorandum in support. ECF Nos. 50, 51. Another Roseboro Notice was issued on May 13, 2019. ECF No. 56.

On May 14, 2019, Defendant David Proctor D.O. ("Proctor") filed a Motion to Dismiss with a memorandum in support. ECF Nos. 58, 59.  On May 15, 2019, a third Roseboro Notice issued. ECF No. 60.

On May 16, 2019, Defendant Dina Paul M.D. ("Paul") filed a Motion to Dismiss with a memorandum in support. ECF Nos. 62, 63. Another Roseboro Notice issued on May 20, 2019. ECF No. 66.

On May 29, 2019, Plaintiff filed four separate responses in opposition: to Defendants McCann, Wexford, and Paton's motion to dismiss [ECF No. 69]; to Defendants Sandy, Jividen, and Martin's motion to dismiss [ECF No. 70]; to Defendant Proctor's motion to dismiss [ECF No. 71]; and to Defendant Paul's motion to dismiss. ECF No.  72.

On May 30, 2019, Defendant Kevin C. Halloran ("Halloran") filed a Motion to Dismiss with a memorandum in support. ECF Nos. 73, 74.  On June 4, 2019, a fifth Roseboro Notice issued. ECF No. 75. On June 11, 2019, Plaintiff filed a response in opposition to Defendant Halloran's dispositive motion. ECF No. 81. On June 12, 2019, Halloran filed a reply. ECF No. 82.

On June 11, 2019, Defendants Wexford, McCann, Paul, Proctor, and Paton filed a reply to Plaintiff's responses [ECF No. 69, 71, 72] to their dispositive motions [ECF Nos. 34, 35, 58, 59, 62, 63]. ECF No. 80.

On June 20, 2019, Plaintiff filed a response in opposition to Wexford, Halloran, McCann, Paul, Proctor, and Paton's replies. ECF No. 83. That same day, Defendants Wexford, McCann, Paul, Proctor, Paton, and Halloran moved to strike Plaintiff's response to their replies. ECF No. 84.

On September 10, 2019, Plaintiff filed a 148-page document titled "to whom it may concern, July 30, 2018,"[3] detailing a long list of state and federal authorities he contends he has reported his claims to, over the years dating back to 2004; providing a chronology of events dating back to January 8, 2004; and attaching copies of certain excerpts from his medical records. ECF No. 85. On November 22, 2019, Plaintiff filed a "Notice" regarding treatment of Hepatitis C ("HCV") being covered by Medicaid. ECF No. 86.

The matter is now before the undersigned for a Report and Recommendation to the District Judge pursuant to Local Rule of Prisoner Litigation Procedure ("LR PL P") 2 and 28 U.S.C. § 636(b)(1)(B).

---

[3] This document appears to have been prepared for the earlier iteration of this case that Plaintiff filed in the United States District Court for the Southern District of West Virginia as Case No. 2:17cv01549 (hereinafter "Redden I"), raising an Eighth Amendment claim of deliberate indifference to serious medical needs and detailing Plaintiff's efforts to administratively grieve his claims regarding the same. Plaintiff's claims for monetary damages against the named defendants (David Ballard, former Warden of MOCC, Wexford Health Sources, Inc., and the West Virginia Division of Corrections ("WVDOC")) for their failure to treatment him with direct-acting anti-viral drugs ("DAA drugs") for HCV were dismissed on grounds of Eleventh Amendment and/or qualified immunity, and Plaintiff's claims for declaratory and injunctive relief in the form of the desired treatment he sought for HCV were denied and dismissed as moot, because Plaintiff had already been transferred outside of the S.D. of W.Va. to this district by the time the district court ruled on the case. See Redden v. Ballard, 2018 U.S. Dist. LEXIS 153770 (S.D. W.Va. Sept. 10, 2018) aff'd, Redden v. Ballard, 2019 U.S. App. LEXIS 2150 (4th Cir. W.Va., Jan. 23, 2019)

## II. Background

According to the Amended Complaint, in January, 2004, while incarcerated at Mt. Olive Correctional Center ("MOCC"), Plaintiff contracted Hepatitis C[4] ("HCV").[5] ECF No. 17-1 at 2. Since then, he contends that while he was at MOCC then at HCC, he repeatedly requested "the treatment of cure" for HCV, the direct-acting antiviral ("DAA") drug Harvoni, which he avers is now "the standard of care." Id. at 3.

## III. Contentions of the Parties

### A. The Amended Complaint, ECF No. 17

In the Amended Complaint, Plaintiff raises five claims which, when reorganized and condensed for clarity, state three: an Eighth Amendment claim arising out of the denial of the proper treatment and cure for his HCV (i.e. the drug "Harvoni"); a First Amendment retaliation claim; and a medical negligence claim. ECF No. 17 at 7 – 8.

More specifically, Plaintiff alleges that that Defendants' deliberate indifference to his serious medical needs is causing his prolonged exposure to HCV, which can potentially lead to pain, suffering, liver and organ damage, liver cancer and/or liver failure. ECF No. 17-1 at 6. He alleges that instead of prescribing him Harvoni, Wexford's doctors will only provide medical

---

[4] HCV is transmitted through blood-to-blood contact and is frequently spread through the use of shared needles. Due in part to its means of transmission, HCV is relatively common among prison populations, affecting 16% to 41% of incarcerated individuals. See Scott A. Allen et al., *Hepatitis C Among Offenders*, 67 Fed. Probation 22, 24 (2003). That percentage is substantially higher than the rates of HCV observed among the general public. Gordon v. Schilling, 937 F.3d 348, 351 (4th Cir. 2019).

[5] Plaintiff alleges that he contracted HCV as a result of a physical and sexual assault by multiple prison staff and inmates that occurred January 10 – 12, 2004, at Mt. Olive Correctional Center ("MOCC"). See ECF No. 17-1 at 2 - 3. However, a PACER review of Plaintiff's prior litigation indicates that Plaintiff may be suffering from a psychotic disorder for which he refuses medication; Plaintiff exhibits delusional behavior; and his allegations regarding the January, 2004 rape were investigated but found to be unsubstantiated. See Redden v. Warden, Mount Olive Corr. Complex, No. 5:05cv389, ECF No. 130, Proposed Findings and Recommendation, ECF No. 130, VanDervort, R.C. (S.D. W.Va. Sep. 7, 2006) *adopted by* Redden v. Warden, Mount Olive Corr. Complex, 2007 U.S. Dist. LEXIS 18323, Johnston, T.E. (S.D. W.Va. Mar. 14, 2007).

monitoring via blood testing; tell him to "watch what he eats;" and assure him that his immune system will fight off the virus. Id. at 3 – 4; ECF No. 17-5 at 2. However, Plaintiff insists that because the prison does not provide any special diet for inmates with HCV, he has been "forced" to eat processed foods at HCC "and other prisons," which can cause "liver damage, fibrosis and cirrosis [sic]." ECF No. 17 at 8. He alleges that although Wexford has "issued ["DAA"] drug treatment for some inmates," and that when given early enough, those treatments "seem to be successful," Wexford denies the treatment to other inmates, including him, merely because of the drug's cost, permitting those inmates to suffer liver failure, liver cancer, and death. ECF No. 17-1 at 4 – 5. He avers that Dr. Proctor at HCC told him "if you had $90,000 . . . you can [sic] get the cure (Harvoni)." Id. at 5.

Plaintiff alleges that HCC's guidelines for HCV treatment are inappropriate, because they permit liver damage to progress. ECF No. 17 at 8. In support of his "guidelines" claim, he cites to his motion for injunctive relief, Cunningham v. Sessions,[6] and "Hoffer v. Jones (11th Cir)"[7] in support of his claim for injury. Id.

Plaintiff alleges a First Amendment retaliation claim against Wexford and the WVDOC for repeatedly moving him "from prison to prison" to intentionally delay his lawsuit(s) and cause further damage to his liver. ECF No. 17 at 8.

---

[6] Cunningham v. Sessions, 2017 U.S. Dist. LEXIS 82910; 2017 WL 2377838 (D.S.C. May 31, 2017) (finding that the refusal to provide curative therapy for HCV to the plaintiff inmate could plausibly state an Eighth Amendment claim, but granting qualified immunity to the defendant prison staff for damages based on the "rapidly evolving" legal and medical developments, stating that "there is no clearly established statutory or constitutional right *at this time* for inmates with chronic Hepatitis C to be treated with DAA drugs." Id. at *10.

[7] Plaintiff does not provide a full citation for this case, referring to it only as "Hoffer v. Jones (Fla. 11th Dist.) [sic]." See ECF No. 17 at 8. However, there are two opinions from the Northern District of Florida styled as Hoffer v. Jones, and both were entered the same day; one is an order granting the plaintiff prisoners' motion for class certification, and the other, an order granting the plaintiff prisoners' motion for a preliminary junction. This latter opinion, Hoffer v. Jones, 290 F.Supp. 3d 1292 (N.D. Fla. Nov. 17, 2017) is presumably the case Plaintiff intends to rely on.

Finally, he raises a medical negligence claim against Wexford, its doctors, and its medical staff, for not using the latest guidelines to treat inmates with HCV. ECF No. 17-1 at 7 – 9. He specifically alleges that Dr. Proctor kept improper records of his care.  ECF No. 17 at 4; see also ECF No. 17-1 at 7 – 8.

Plaintiff contends that he exhausted his administrative remedies. ECF No. 17 at 6.

He avers that as a result of Defendants' failure to provide him the "cure" of Harvoni, he suffers bleeding into his urinary tract; urinary tract infections; liver pain; lower abdominal pain; headaches; constant liver pain; and loss of sleep due to pain. ECF No. 17-1 at 4; Id. at 8.

For relief, Plaintiff seeks a declaratory judgment stating that the defendants repeatedly and unjustifiably denied him the treatment of a cure for HCV and that the defendant doctors used treatment guidelines known to be ineffective in in patients with HCV, [ECF No. 17 at 9; ECF No. 17-2 at 1]; and an injunction directing the defendants to provide him the "treatment of cure (Harvoni) . . . until his HCV is cured and no longer detectable in all . . . [laboratory] tests." ECF No. 17-2 at 1, ECF No. 17 at 9. He also seeks reimbursement for "all costs" accrued in pursuit of his claims; a protective order to ensure no retaliatory acts are committed against him for filing suit; and unspecified monetary damages for his pain and suffering arising out of the denial and/or delayed treatment of his HCV, including compensation for his civil rights that were violated when he was forced to refile this case after Redden I was dismissed, because that caused "further pain and suffering and damage to liver." ECF No. 17-2 at 2 - 3; see also ECF No. 17 at 9.

Attached to his Amended Complaint, in addition to two documents titled "Statement of Claim" and "Relief Sought," are a list of witnesses; "Costs Occured [sic – accrued]; copies of grievances and responses; copies of Inmate Medical Services Requests; a copy of the Proposed Findings and Recommendation entered in Redden I, on which Plaintiff has made hand-written

commentary notations in the margins; a copy of the Order, adopting the same; copies of two letters from an organization called Disability Rights of West Virginia ("Disability Rights"), one addressed to Plaintiff, dated September 27, 2018, and one addressed to Wexford, dated September 5, 2018; a copy of July 30, 2018 8-page letter from Plaintiff to the Fayette County District Attorney's Office; a copy of an October 10, 2014 Business Wire article announcing that the FDA had approved Harvoni that day for the treatment of chronic HCV genotype I infection, to be "considered for treatment naïve[8] patients without cirrhosis who have baseline HCV viral load below 6 million IU/mL;" a copy of an article titled "Hep C is the Leading Cause of Liver Cancer," apparently downloaded from http://www.hepchope.com/about-hep-c/liver-cancer?gclid+EAIaIQobChMIkY_f7tKx1wI ; a copy of a September 12, 2017 CDC article, titled "Liver Cancer and Viral Hepatitis," briefly referring generally to the availability of promising new treatments for HCV; a copy of a December 2017 article from Prison Legal News, titled "Judge Orders Florida DOC to Immediately Start Treating Prisoners with HCV." See ECF Nos. 17-1, 17-2, 17-3, 17-4, 17-5.

**B. The Defendants'[9] Motions to Dismiss, ECF Nos. 34, 50, 58, 62, 73**

All of the Defendants assert that the Plaintiff's deliberate indifference claim seeking monetary damages against them alleging a denial of the "cure" of Harvoni treatment for his HCV is barred by *res judicata*, because Plaintiff received a judgment on the merits regarding the claim in Redden I. See ECF No. 35 at 4; ECF No. 51 at 5; ECF No. 59 at 4; ECF No. 63 at 4; ECF No. 74 at 4.

---

[8] "Treatment naïve" refers to patients who have never before undergone treatment for a particular illness. See Treatment Naive for Illness Therapies, *available at*: < https://www.verywellhealth.com/treatment-naive-3132655 >

[9] Defendants Wexford, Halloran, McCann, Paul, Proctor, and Paton will be referred to collectively herein as "the Wexford defendants."  Defendants Sandy, Jividen, and Martin will be referred to collectively herein as "the WVDOC" defendants.

The WVDOC defendants further argue that Plaintiff's claims against them are asserted in their official capacities, and therefore, should be dismissed, because such claims are not permitted under § 1983 or the Eleventh Amendment. ECF No. 51 at 8. They contend that as supervisory personnel, any claim against them should be dismissed because Plaintiff fails to allege sufficient facts to state an Eighth Amendment claim. Id. at 9. Finally, they contend that as government officials performing discretionary functions, they are entitled to qualified immunity. Id. at 13.

The Wexford defendants argue that they are entitled to qualified immunity from monetary damages, because Plaintiff has no clearly established right to receive Harvoni.  ECF No. 35 at 15; ECF No. 59 at 13; ECF No. 63 at 13; ECF No. 74 at 13. Defendants Paton, McCann, and Halloran further deny that they had any role in deciding or providing Plaintiff's medical treatment and therefore, they should be dismissed from this action. ECF No. 35 at 13 – 14; ECF No. 74 at 14 – 15. The Wexford defendants also argue that Plaintiff's attempt to obtain an injunction forcing them to prescribe him Harvoni must fail, because Plaintiff cannot meet the standard for the same. ECF No. 35 at 7; ECF No. 59 at 7; ECF No. 63 at 7; ECF No. 74 at 7. The Wexford defendants contend that Plaintiff's request for a declaratory judgment stating that Defendant Proctor repeatedly and unjustifiably denied him a cure for HCV should be dismissed as insufficiently pled, given that Plaintiff admits that Wexford does treat some HCV-infected inmates with Harvoni; but Plaintiff does not meet the medical criteria for Harvoni and his claims to the contrary are simply his own non-medical unsupported opinion, amounting to a mere disagreement over a course of treatment. ECF No. 35 at 23 – 24; ECF No. 59 at 21 – 22; ECF No. 63 at 21 – 22; ECF No. 74 at 22. The Wexford defendants further contend that Plaintiff's claims for declaratory relief regarding the treatment guidelines for HCV should be dismissed as insufficiently pled. ECF Nos. 35 at 23; 59 at 21; 63 at 21; 74 at 21.

Attached to the Halloran motion to dismiss is an affidavit by Joseph Ebbitt, Director of Risk Management, HIPAA Compliance and Legal Affairs for Wexford Health Sources, Inc., since mid-December, 2013, (hereinafter "Ebbits Affidavit") attesting to the various positions held by the Wexford defendants and their individual duties regarding the same. See ECF No. 73-2.

As for Plaintiff's retaliation claim, the Wexford defendants assert that they have no role in deciding where inmates are housed or whether they should be moved. ECF No. 35 at 18; ECF No. 59 at 15; ECF No. 62 at 15; ECF No. 74 at 16.   Dr. Proctor further argues that Plaintiff's claim that he had any involvement in Plaintiff's transfer is insufficiently pled. ECF No. 59 at 15.  The WVDOC defendants argue that Plaintiff's retaliation claim is so insufficiently pled that it fails to state a claim upon which relief can be granted. ECF No. 51 at 14 -15.

All defendants aver that Plaintiff's claim regarding the "forced" diet of processed foods should be dismissed as insufficiently pled; barred by the applicable statute of limitations ("SOL"); and/or for the failure to exhaust. See ECF No. 35 at 19; ECF No. 59 at 16; ECF No. 63 at 16 – 17; ECF No. 74 at 17; 51 at 10.

The Wexford defendants argue that Plaintiff's claims for medical negligence should be dismissed because he has not complied with the statutory prerequisites of the West Virginia Medical Professional Liability Act ("WVMPLA"). ECF No. 35 at 17; ECF No. 59 at 15; ECF No. 63 at 15; ECF No. 74 at 15.

The WVDOC defendants contend that Plaintiff's claims for attorney fees[10] [sic] [ECF No. 17-4] should be dismissed because Plaintiff is not represented by counsel. ECF No. 51 at 16.

---

[10] Plaintiff attached to his complaint a list of "costs occured [sic - accrued] to plaintiff," apparently tallying amounts paid for filing fees, copies, postage, and his time spent researching and preparing various documents over the years. See ECF No. 17-4. Plaintiff's complaint made no claim for attorney's fees.

## C. Plaintiff's Responses in Opposition

Plaintiff's five rambling, stream-of-consciousness responses in opposition to the Defendants' motions to dismiss are extremely disorganized and repetitive. They repeatedly reiterate his claims and arguments against all Defendants in his responses to each and every other defendants' dispositive motion(s), and attempt to refute all of the Defendants' arguments on the same.  The arguments have been condensed as much as possible and reorganized here for clarity.

## (1) *Res Judicata*

Plaintiff contends that not all of his deliberate indifference claim is *res judicata*, because the Redden I court instructed him to file his claim for declaratory and injunctive relief here. ECF No. 69 at 2; ECF No. 70 at 3 – 4; ECF No. 71 at 2.  Further, this case is different than Redden I, which had a two-part ruling, one which denied monetary relief and the other that mooted his requests for declaratory and injunctive relief because he had been transferred to a different jurisdiction. ECF No. 72 at 2. He describes the instant case as the "second part" of Redden I that was deemed moot. ECF No. 81 at 3. He makes an unclear argument that this case is also different than Redden I because different persons are defendants, but WVDOC and Wexford are still being sued; some of the same claims are being raised, along with some new claims. ECF No. 72 at 2 - 3. He argues that because counsel for Wexford moved to have Redden I dismissed, the individual Wexford employees "should be defendants" in this case. ECF Nos. 69 at 4.  Further, he notes that here, he is asking for different monetary relief than previously requested: he now seeks unspecified compensatory damages from September 11, 2018 until the requested treatment is rendered to him and the virus is no longer detectable in his body by lab testing.[11] ECF No. 72 at 2 – 3; see also ECF No. 69 at 2; 71 at 2; 81 at 3. Finally, he argues that his First Amendment retaliation claim

---

[11] This is the first time Plaintiff has asserted this claim in relation to monetary damages.

regarding being moved from "prison to prison," his processed food claim, and his claim regarding the HCV guidelines are not barred by *res judicata* because they have never previously been raised. ECF No. 69 at 2; ECF No. 70 at 3 – 4.

**(2) <u>Deliberate Indifference to Serious Medical Needs (Harvoni)</u>**

Plaintiff contends that the WVDOC defendants are liable because Defendant Sandy is "over the approval" of all policies and directives for West Virginia prisons; Jividen "approves policies and . . . directives" for prison officials' use; Martin ensures that the policies and directives are enforced by HCC staff [ECF No. 70 at 2]; and Wexford is under WVDOC's supervision. ECF No. 70 at 5. Further, Warden Martin signed off on his grievances, so he had knowledge of Plaintiff's claims [ECF No. 70 at 5] and Defendants Sandy and Jividen were also on notice because of the grievances Plaintiff filed. ECF No. 70 at 2.

Plaintiff further argues that all of the Wexford defendants were on notice because they were aware of the dangers of failing to properly treat HCV, because Wexford was involved in the Florida Department of Corrections ("FDOC") case of <u>Hoffer v. Jones</u>. ECF No. 69 at 4 – 5; ECF No. 70 at 6; ECF No. 81 at 5. He argues that despite Wexford's involvement in <u>Hoffer</u>, Wexford is "still repeating the mistakes made in the past." ECF No. 69 at 9.

Plaintiff reiterates his claim that Paton is liable because she is "over" the health care at HCC, should know what is in patient records, and she is liable because she denied his grievances. ECF No. 69 at 6 – 7; ECF No. 70 at 5; ECF No. 70 at 5; ECF No. 71 at 3 – 4. He contends that the Ebbitt Affidavit says that it is Paton's job to know the records of the patients under her care and "clearly she did not." ECF No. 81 at 8.   On numerous occasions, Dr. Proctor gave "dangerously misleading" medical advice, by telling "a lot of inmates" with HCV that they were "next to normal" and that their bodies were curing the virus on their own. ECF No. 71 at 4; <u>see also</u> ECF

12

No. 81 at 3 - 4. These acts by Proctor caused "unwanton [sic] infliction of pain and suffering" and violated Plaintiff's Eighth Amendment rights. Id. at 5. He avers that Proctor's keeping blank and incomplete records and failing to do anything about Plaintiff's "abnormally low" blood tests, by telling him that "your [sic] next to normal" constitutes deliberate indifference. ECF No. 81 at 6 – 7. Plaintiff contends that Proctor does not recognize the new standard for HCV treatment recommended by the FDA, CDC, and American Liver Cancer Institute [ECF No. 71 at 5]; Plaintiff avers that he himself is personally  aware of the danger of HCV, because his older brother and oldest son died of HCV. ECF No. 71 at 7, 15; see also ECF No. 72 at 9. He contends that if Dr. Paul had "kept up . . . [his] medical diagnosis [sic]" she would have realized something was wrong by his symptoms and his blank/incomplete records, and could have intervened to prevent damage to his liver and this suit being filed. ECF No. 72 at 10 – 11.

**(3) Forced Diet of Processed Foods**

Plaintiff avers that Dr. Sandra May, a Wexford physician[12] at MOCC, once told him he should "avoid iron rich foods and processed foods" because "chemicals damage the liver." ECF No. 69 at 8; ECF No. 70 at 9; ECF No. 71 at 12; ECF No. 72 at 8. He argues that by opposing this claim, Wexford's counsel is in effect arguing with Wexford's own doctors. ECF No. 71 at 12; ECF No. 72 at 8; ECF No. 81 at 8. In response to the Defendants' argument that his 2008 processed foods claim was unexhausted, he contends that he never got a response after appealing his 2008 grievance on the issue to the commissioner. ECF No. 70 at 10; ECF No. 72 at 8. Nonetheless, he argues that his 2008 grievance regarding processed foods should support his claim, because HCC does not provide special diets for inmates with HCV, and Paton, as Wexford's HCC health

---

[12] In Plaintiff's Amended Complaint in Redden I, he identifies Sandra May as a physician's assistant, not a physician. See Redden v. Ballard, Case No. 2:17cv01549, ECF No. 25 at 11.  In that Amended Complaint, Plaintiff also admits that sometime between October 17, 2017 and November 14, 2016, Sandra May also told him that "his numbers were not high enough to receive treatment of cure for . . .[HCV]." Id.

administrator, should ensure that those diets are provided. ECF No. 69 at 8.  He insists that the FDA, CDC, and American Liver Cancer Institute all say that a healthy diet is necessary to maintain a healthy liver. ECF No. 71 at 13. Finally, he notes that a May 27, 2019 report on television about a new "government" study linked processed foods to cancer. ECF No. 81 at 11.

Regarding Defendants' arguments that the processed foods claim is barred by the SOL, he contends that he "was never informed of this by any legal aid" at HCC. ECF No. 70 at 10; ECF No. 71 at 12 – 13. Nevertheless, he contends that if the SOL is an issue, the 2008 grievance should be taken at "face value" to show that inmates with HCV get no special diet, as recommended by Dr. Sandra May [sic]. ECF No. 72 at 8.

**(4) Treatment Guidelines**

Plaintiff argues that HCC's guidelines for only permitting the "treatment of cure" to be given to select inmates with HCV are "too stringent," and argues that under the holding of Hoffer, mere lab testing is insufficient because the virus can still continue to proliferate, permitting liver fibrosis to progress to cirrhosis, beyond the point where DAA drugs can help. ECF No. 69 at 9; ECF No. 70 at 2, 6, 15; ECF No. 81 at 13.  He contends he should be given an ultrasound to rule out liver enlargement, and/or a liver biopsy, to determine if fibrosis or cirrhosis are present, because these tests are "standard practice" for HCV patients.  ECF No. 69 at 11. He reiterates his claim that HCC should follow the HCV treatment guidelines recommended by the FDA, CDC, and American Liver Cancer Institute. ECF No. 69 at 13.

Attached to Plaintiff's response in opposition to Dr. Paul's dispositive motion are three affidavits from other prisoners with HCV and one from Plaintiff himself, challenging Wexford's failure to treat them with Harvoni, based on their "low" viral load numbers in laboratory testing, and questioning the accuracy of the same.  See Stephen M. McGaultney affidavit ("McGaultney

Affidavit") ECF No. 72-1 at 1 - 2; Keith Marshall Martin affidavit ("Martin Affidavit") ECF 72-1 at 3; John Barnett affidavit ("Barnett Affidavit") ECF No. 72-1 at 5; and Ronnie Redden affidavit ("Redden Affidavit") ECF No. 72-1 at 4.

**(5) Qualified Immunity**

Plaintiff argues that Wexford itself along with its employees, as a vendor and a business for profit, is not entitled to qualified immunity. ECF No. 69 at 10, 16; ECF No. 71 at 9 – 10; ECF No. 72 at 6; ECF No. 81 at 10.  Further, he argues that WVDOC is not entitled to qualified immunity because it was on notice after the Hoffer case, and deliberately avoided "the facts of law." ECF No. 70 at 11.

**(6) First Amendment Retaliation**

Plaintiff argues that Wexford's filing a motion to dismiss in Redden I, urging the court to find his claims for declaratory and injunctive relief moot because he was no longer within the jurisdiction of the that court intentionally delayed his case, constituting "direct involvement" in his First Amendment claim for retaliation because it prolonged this litigation, causing him further pain and suffering.  ECF No. 69 at 11; ECF No. 70 at 4. He contends that because of this "unlawful" act, the Wexford Defendants are liable to him for causing delay in these proceedings, increased costs, further pain, suffering, and liver damage [ECF No. 71 at 3] and that Wexford's counsel should have "warned" the Wexford Defendants of the legal ramifications of this "unlawful act" before filing the motion to dismiss in Redden I. ECF No. 72 at 8; ECF No. 81 at 4.

Plaintiff denies ever claiming that Drs. Proctor or Paul were involved in the retaliatory moving of Plaintiff from prison to prison; he avers that it was only the WVDOC and Wexford itself who were responsible. ECF No. 71 at 12; ECF No. 72 at 7.

**(7) Injunctive Relief**

Plaintiff repeats his claims that he is entitled to injunctive relief, because the case is likely to succeed on its merits, and the FDA, CDC, and American Liver Cancer Institute all say that HCV is dangerous if untreated, thus, he is in "eminent [sic] danger." ECF No. 69 at 14; ECF No. 71 at 8 – 9; ECF No. 72 at 5. He argues that permitting HCV to remain in his body unmonitored is a "malicious and neglectful act" that would "shock the conscience" of anyone with knowledge." ECF Nos. 69 at 14.  He argues that Disability Rights, as a "federal organization," recommended treatment for him after examining his medical records, which should "tip . . . the favor [of] the equities" toward him, and that it is in the public's best interest that he receive Harvoni, because it would prevent the spread of disease.  ECF No. 69 at 14 – 16; see also ECF No. 81 at 10.

**(8) Medical Negligence - WVMPLA**

Plaintiff repeats his claim that Dr. Proctor was negligent because some of his records were inadequate, incomplete, and blank [ECF No. 69 at 5; ECF No. 70 at 6; ECF No. 71 at 3] and further asserts that Proctor had "no medical interest" in Plaintiff's care and did "nothing." ECF No. 70 at 5; ECF No. 81 at 8.  He contends that the Disability Rights letter he produced is proof of this, as is Proctor's statement that Plaintiff's lab test numbers were "abnormally low, next to normal." ECF Nos. 69 at 5, 7. He argues that Proctor and Paul's denial of the "treatment of cure" increased his pain and suffering. ECF No. 69 at 6. He admits that he has not been seen by Dr. Paul "in over 5 years in a video conference at the prison[.]" ECF No. 69 at 6; ECF No. 72 at 4; ECF No. 81 at 8. He describes Dr. Paul's not seeing him for 5 years as a "neglagent [sic] act of her own making." ECF No. 72 at 4; ECF No. 81 at 8. He argues that instead, Paul should have assessed the progress of his disease; reviewed his medical records and symptoms; and referred him for testing to see if his liver was enlarged or if fibrosis or cirrhosis was present; and he insists that she wrongfully

16

failed to recommend different guidelines for treatment after the <u>Hoffer</u> decision in 2017. ECF No. 72 at 4 - 5.

Regarding his medical negligence claim, Plaintiff contends that the WVMPLA was never mentioned in the packet he received from legal inmate aids when he prepared his complaint, nor has he ever been aware of it or its requirements. ECF No. 71 at 11. He argues that it is impossible for him to obtain a screening certificate of merit while incarcerated, but nonetheless, the same is unnecessary, because he has "established his claim" via the Disability Rights letter, his HCV diagnosis, and case law; further, he never had to file a screening certificate of merit in <u>Redden I</u>. ECF No. 69 at 17; ECF No. 71 at 11; ECF No. 72 at 7. He asserts that the Defendants were "put on notice" of his claims by his letter to the warden, and when Paton responded, she should have noticed that his medical records were "blank." ECF No. 71 at 11. Paton should have intervened instead, failed to examine his records, and "blindly responded to his grievance, told him not to write to the warden about his abnormally low laboratory test numbers" and merely told him "there is nothing wrong and you are being monitored." ECF No. 81 at 7. He argues that instead of notifying the regional director and Wexford of Proctor's negligent acts, Paton "tried to cover it up." ECF No. 81 at 7.

**(9) <u>Attorney Fees</u>**

Regarding the WVDOC Defendants' argument that Plaintiff was not entitled to attorney fees, Plaintiff argues that he is in fact entitled, because he is acting as his own attorney and his time is as valuable as any attorney's who is assigned to a case. ECF No. 70 at 12. Therefore, he now requests attorney fees, but avers that he would waive the same, if counsel for both groups of defendants "will refuse and reject any and all payments from the defendants in both cases." <u>Id.</u>

**(10) Wexford's Failure to Properly Serve its Dispositive Motion**

Plaintiff makes an unclear argument regarding Wexford's dispositive motion, contending that it was not "legally served" on him because it arrived by regular, and not "legal" mail; therefore, it is not a "legal" document in accordance with federal rules and regulations, and "should be thrown out of this court." ECF No. 69 at 18.

**D. The Wexford Defendants' Replies:**

The Wexford Defendants reiterate their argument that all of Plaintiff's Eighth Amendment claims for monetary damages for injury over not receiving Harvoni for his HCV have already been adjudicated on their merits in Redden I and should be dismissed.  ECF No. 80 at 1; ECF No. 82 at 1.  Further, they contend that they are entitled to qualified immunity from Plaintiff's claims for monetary damages for the same, because despite Plaintiff's contentions to the contrary, Wexford, with its employees, as a private corporation that contracts with a state entity to provide medical services to inmates, is considered to act under the color of state law and therefore, the deliberate indifference standard applies. ECF No. 80 at 2; ECF No. 82 at 2 – 3.  The Redden I ruling that Wexford was entitled to qualified immunity was affirmed by the Fourth Circuit; judgment took effect via mandate on March 19, 2019; and Plaintiff did not petition for *certiorari*. ECF No. 82 at 1 – 2. Accordingly, there was a final adjudication on the merits as it pertains to **any** claims Plaintiff has for monetary damages against Wexford, its agents and/or employees for not prescribing him Harvoni, thus, *res judicata* applies. ECF No. 82 at 2. Further, Plaintiff's new claim of entitlement to monetary damages from September 11, 2018 forward should be specifically dismissed as to Defendant Halloran, because as set forth in the Ebbitt Affidavit [ECF No. 73-2 at 2], Halloran left Wexford on December 31, 2016, thus, he no longer had any relationship with Wexford after that time. ECF No. 82 at 2.

18

Plaintiff's 2008 claim regarding his forced diet of processed foods is barred by the SOL which expired in 2010; alternatively, it should be dismissed for failure to exhaust, because he did not fully grieve the issue. ECF No. 81 at 4; ECF No. 82 at 4 – 5.

Plaintiff's claim that no screening certificate of merit is necessary because his HCV is well documented in his medical records and his providers would not provide the DAA drugs does not meet the statutory prerequisites for asserting a claim under the WVMPLA; Plaintiff's argument is, in effect, merely that "the standard is too high." ECF No. 80 at 4 – 6; ECF No. 82 at 5 – 7. Plaintiff's condition is a complex medical issue that no lay juror could resort to common knowledge to understand; it requires an expert medical opinion. ECF No. 80 at 6. Further, any WVMPLA claim against should be specifically dismissed as to Halloran, because he is not a medical professional, had no responsibility for Plaintiff's treatment, and no role in implementing medical policies or procedures. ECF No. 82 at 7 – 8.

Plaintiff has failed to sufficiently plead that any Defendant acted with the requisite deliberate indifference to serious medical needs required to state an Eighth Amendment claim, and therefore, his claims for injunctive relief and declaratory judgment should be dismissed. ECF No. 80 at 7 - 11; ECF No. 82 at 8 – 11. Halloran further avers that the claim for injunctive relief against him is moot because he no longer works at Wexford. ECF No. 82 at 8.

Plaintiff's claim that Wexford's treatment guidelines for inmates with Hepatitis C are too stringent and do not meet the standard set forth in Hoffer overlooks the fact that unlike Hoffer, where no FDOC inmates were originally receiving the drug, here, Wexford does have a treatment protocol guideline for prescribing Harvoni; Plaintiff admitted the same when he averred that some WVDOC inmates received the drug. ECF No. 80 at 10. Further, in reviewing Hoffer, it is apparent

19

that (1) Plaintiff has misstated its holding;[13] and (2) Wexford was no longer contracted with the State of Florida by the time the request for a preliminary injunction was filed in that case. ECF No. 82 at 10.

Regarding Plaintiff's First Amendment retaliation claim for being moved from one prison to another, Wexford and its employees have no involvement transferring inmates. ECF No. 80 at 3; ECF No. 82 at 4. Halloran further argues that this retaliation claim should be specifically dismissed as to him, because he was no longer employed at Wexford by the time Plaintiff was transferred. ECF No. 82 at 4.

### E. **Plaintiff's Surreply**

Plaintiff's second response in opposition is titled "Motion of Memorandum to the reply of council [sic], for Wexford . . . Halloran . . . McCann . . . Paul . . . Proctor . . . and . . . Paton." In it, Plaintiff again reiterates in great detail what he has already repeatedly argued, and attempts to refute the Wexford Defendants' arguments on the same. Plaintiff appears to believe that he raised

---

[13] Regarding the FDOC's inability to begin treating all inmates immediately, the court directed that the FDOC implement this plan:

> Accordingly, with limited exceptions, this Court is ordering Defendant to ensure that FDC complies with its own expert's [Dr. Dewsnup] recommendations. Specifically, FDC must update its HCV-treatment policy . . . in line with the shortcomings noted by Dr. Dewsnup during the hearing before this Court so that there is a clear plan for doctors and practitioners to follow. Moreover, FDC must formulate a plan to implement its policy by screening, evaluating, and treating inmates in line with the directions and timelines identified by Dr. Dewsnup . . . To the extent FDC does not have the system capacity to meet these requirements, it must increase its capacity and outline a timetable for doing so.

> As to system capacity, Dr. Dewsnup testified that FDC will likely only be able to evaluate inmates at a rate of 100 per month. . . . To the extent Dr. Dewsnup finds this rate acceptable, this Court disagrees. Dr. Dewsnup testified that, as long as otherwise eligible, inmates with decompensated cirrhosis should be treated immediately, inmates with cirrhosis should be treated within three to six months, and inmates with F2 and F3 fibrosis scores should be treated within a year. Id. Moreover, Dr. Dewsnup testified that **the balance of the infected inmates, with F1 and F0 fibrosis scores, should continue to be monitored, including restaging labs every six months. This Court agrees with those timelines, and FDC needs to increase its system capacity to be able to satisfy them**.

Hoffer v. Jones, 290 F. Supp. 3d 1292, 1305-06 (N.D. Fla. 2017) (emphasis added).

a medical negligence claim in <u>Redden I</u>, where "30 days notice were [sic] never an issue," and suggests that the <u>Redden I</u>'s ruling to "split the case into two parts should be sufficient" to put the Wexford Defendants on notice of the refiling of this case. ECF No. 83 at 6. He also avers that because he could not afford to pay, he was denied copies of the medical records he needed to produce[14] to obtain an expert witness; thus, he asks the Court to rely on the expert testimony of the <u>Cunningham</u> and <u>Hoffer</u> cases, along with the guidelines propounded by the FDA, CDC, and the American Liver Cancer Institute. <u>Id.</u> at 7.

**F. <u>Wexford Defendants Motion to Strike</u>**

Defendants Wexford, Halloran, McCann, Paul, Proctor, and Paton move to strike Plaintiff's surreply to their reply pursuant to Rule 12(f) of the Federal Rules of Civil Procedure & LR PL P.

**IV. <u>Standard of Review</u>**

**A. <u>Section 1983 Claims</u>**

Plaintiff is seeking relief pursuant to 42 U.S.C. § 1983. ECF No. 51 at 1. Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.

---

[14] The undersigned notes that included with his September 10, 2019 filing titled "To Whom it May Concern," among other things, Plaintiff has produced copies of 132 pages of his medical records dating from December 26, 2006 to August 8, 2018. <u>See</u> ECF No. 85-1.

B. <u>Sufficiency of a Complaint</u>

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. <u>See</u> Fed. R. Civ. P. 8 (providing general rules of pleading), Fed. R. Civ. P. 9 (providing rules for pleading special matters), Fed. R. Civ. P. 10 (specifying pleading form), Fed. R. Civ. P. 11 (requiring the signing of a pleading and stating its significance) and Fed. R. Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). <u>See</u> <u>Francis v. Giacomelli</u>, 588 F.3d 186 (4th Cir. 2009).

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. <u>Revene v. Charles County Comm'rs.</u>, 882 F.2d 870 (4th Cir. 1989). Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> In addition to pleading sufficiently specific factual allegations, a plaintiff must assert a plausible claim in the complaint that is based on cognizant legal authority. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." <u>Id.</u>

Because Plaintiff is proceeding *pro se*, the Court is required to liberally construe his pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976); <u>Haines v.</u>

Kerner, 404 U.S. 519 (1972) (*per curiam*); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978);

Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent

standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent

standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal

construction means only that if the Court can reasonably read the pleadings to state a valid claim

on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir.

1999). However, a court may not construct the plaintiff's legal arguments for him or her. Small v.

Endicott, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely

presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

## V. <u>Analysis</u>

### A. *<u>Res Judicata</u>*

Defendants seek dismissal of Plaintiff's deliberate indifference to his HCV claim for

money damages pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure "to

state a claim upon which relief can be granted." Defendants' motions are based on the doctrine of

*res judicata*, also known as "claim preclusion."  The undersigned agrees with defendants in part:

Redden I bars some, but not all, of Plaintiff's claims.

The Latin phrase "*res judicata*," translated literally into English as "a thing decided," <u>see</u>

BLACK'S LAW DICTIONARY 1470 (rev. 4th ed. 1968), is the name of a legal doctrine that

"bars a party from relitigating a claim that was decided *or could have been decided* in an original

suit." Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 161 (4th Cir. 2008) (emphasis added).

Whether two cases implicate the same cause of action turns on whether they share the same

"nucleus of facts." Page v. United States, 234 U.S. App. D.C. 332, 729 F.2d 818, 820 (D.C. Cir.

1984). The doctrine was "designed to protect 'litigants from the burden of relitigating an identical

issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" Id. at 161-62 (quoting Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979)); see also Montana v. United States, 440 U.S. 147, 153-54 (1979) (recognizing that res judicata avoids the "expense and vexation attending multiple lawsuits, conserves judicial resources," and avoids "inconsistent decisions"). Put differently, it "serves not only 'the defendant's interest in avoiding the burden of twice defending a suit,' but also the important judicial interest in avoiding resolution of an issue that the court has already decided." Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 (4th Cir. 2006) (citation omitted).

Res judicata has been applied in the context of deliberate indifference claims concerning treatment for HCV where the plaintiff had a full and fair opportunity to litigate such claims and then attempted to raise the same cause of action against the same parties in another proceeding. See, e.g., Goodman v. May, No. 2:17cv02266, 2018 U.S. Dist. LEXIS 141730 (S.D. W.Va. Jul. 24, 2018) report and recommendation adopted, 2018 U.S. Dist. LEXIS 141403 (S.D. W.Va. Aug. 21, 2018); Jiminez v. Whitfield, No. 2:10cv02943 (2017 U.S. Dist. LEXIS 5632, 2017 WL 1067791 (E.D. Cal., Jan. 13, 2017); Grindling v. Martone, No. 12cv000361, 2012 U.S. Dist. LEXIS 122826, 2012 WL 3776491 (D. Haw., Aug. 29, 2012); but see Murray v. Wetzel, No. 3:17cv00491, 2018 U.S. Dist. LEXIS 51340, 2018 WL 1334987 (M.D. Pa. Mar. 15, 2018) (Eighth Amendment claim concerning HCV treatment not barred by res judicata where claim not previously brought against defendant); Ibrahim v. District of Columbia, 463 F.3d 3, 373 U.S. App. D.C. 217 (D.C. Cir. 2006) (res judicata did not preclude deliberate indifference claim concerning different medical conditions).

Under federal law, a judgment rendered in a prior case will be given res judicata effect in a subsequent lawsuit when three conditions are met: (1) the subsequent suit presents the "'same

cause of action'" as the prior suit; (2) judgment was rendered "'on the merits" in the prior suit; and (3) the subsequent suit involves "'the same parties or their privies'" as were involved in the prior lawsuit. Ohio Valley Envt'l Coal. v. Aracoma Coal Co., 556 F.3d 177, 210 (4th Cir. 2009) (quoting Aliff v. Joy Mfg. Co., 914 F.2d 39, 42 (4th Cir. 1990)); see Grausz v. Englander, 321 F.3d 467, 472 (4th Cir. 2003).

Here, it is obvious that the first condition is met. "In finding that the second suit involves the same cause of action, the court need not find that the plaintiff in the second suit is proceeding on the same legal theory he or his privies advanced in the first suit." Ohio Valley, 556 F.3d at 210. Rather, "[a]s long as the second suit 'arises out of the same transaction or series of transactions as the claim resolved by the prior judgment,'" the first suit will have preclusive effect." Id. (citation omitted). Indeed, "'[n]ewly articulated claims based on the same [transactional] nucleus of facts may still be subject to a *res judicata* finding if the claims *could have been brought* in the earlier action.'" Laurel Sand & Gravel, 519 F.3d at 162 (emphasis added) (citation omitted) (alteration in original).

This case involves a claim concerning precisely the same basic claim[15] of deliberate indifference to Plaintiff's serious medical need, i.e., Harvoni, to treat his chronic HCV infection, that was at issue in Redden I. To the extent that any of the legal theories differ, they nonetheless arise from the same transactional nucleus of facts and thus are considered the "same cause of action" for *res judicata* purposes. The implication of this will be addressed further *infra*.

The undersigned is also satisfied that Redden I was a decision "on the merits" of the original deliberate indifference claim regarding Plaintiff's HCV, for purposes of *res judicata*,

---

[15] Plaintiff did not raise the "subparts" of his present deliberate indifference claim regarding the "forced" diet of processed foods or HCC's failure to follow the guidelines of the FDA, CDC, and "American Liver Cancer Institute" in Redden I.

thereby satisfying the second condition for claim preclusion as to at least some of the claims: after having been given the opportunity to amend his complaint once, Redden I was dismissed with prejudice;[16] affirmed by the Fourth Circuit;[17] and, after his petition for rehearing/rehearing *en banc* was denied, Plaintiff's failure to petition the Supreme court for a writ of *certiorari* rendered the judgment final.

The decision in Redden I was based on two grounds. First, Plaintiffs' § 1983 claims against the WVDOC and Warden David Ballard in their official capacities were barred by state sovereign immunity under the Eleventh Amendment.[18] Second, to the extent that claims were asserted against the warden and Wexford (the contracted medical provider for the WVDOC) and its employees in their individual capacities, they were not pled with sufficient particularity or plausibility to "state a claim upon which relief [could] be granted." Fed. R. Civ. P. 12(b)(6). Recognizing that Plaintiff's claim for damages was based on the "rapidly evolving" legal and medical developments in the area of HCV treatment, in the absence of any controlling precedent from the Supreme Court or Fourth Circuit, the court found that Plaintiff had no clearly established right "at this time"[19] to be treated with DAA drugs, and granted the Defendants Ballard, Wexford and Wexford's individual

---

[16] In contrast, if the court specifies that a dismissal is without prejudice, there is no claim preclusion. "Dismissals without prejudice do not bar subsequent suits by *res judicata*." Choice Hotels Int'l, Inc. v. Goodwin & Boone, 11 F.3d 469, 473 (4th Cir. 1993).

[17] Plaintiff's appeal of Redden I was dismissed because he had "waived appellate review by failing to file specific objections to the particularized legal recommendations made by the magistrate judge after receiving proper notice." Redden v. Ballard, No. 18-7232, 2019 U.S. App. LEXIS 2150 (4th Cir. Jan. 23, 2019)

[18] The claims also were dismissed based on the proposition that neither a state agency nor a state official sued in his official capacity is a "person" subject to suit under § 1983. However, that doctrine is itself partly based on Eleventh Amendment concerns. See Will, *supra*, 491 U.S. at 66-67 (stating that "in deciphering congressional intent as to the scope of § 1983, the scope of the Eleventh Amendment is a consideration, and we decline to adopt a reading of § 1983 that disregards it").

[19] As of the date of entry of this Report and Recommendation, there is still no controlling precedent from the Supreme Court or Fourth Circuit to show that Plaintiff has any clearly established right to be treated with DAA drugs.

employees qualified immunity for any damages. Because Plaintiff had been transferred to this district, his claims for declaratory and injunctive relief were mooted.

It is an open question in the Fourth Circuit whether a dismissal on the basis of Eleventh Amendment immunity is a dismissal "on the merits" for *res judicata* purposes. See Andrews v. Daw, 201 F.3d 521, 524 n.2 (4th Cir. 2000) (assuming "without deciding that a dismissal on Eleventh Amendment immunity grounds is a final judgment on the merits for purposes of *res judicata*").[20] However, even if the deliberate indifference claim in Redden I is not formally entitled to *res judicata* effect as to the Eleventh Amendment issues, it matters little here, because Plaintiff's deliberate indifference claims against the WVDOC defendants in their official capacities are subject to dismissal for the same substantive reasons that those claims were dismissed in Redden I: states and their officials sued in their official capacities are entitled to Eleventh Amendment immunity from suit and are not "persons" subject to liability under § 1983. See Will, *supra*, 491 U.S. 58.

---

[20] The applicable law for purposes of *res judicata* is the law of the tribunal in which the prior judgment was entered. See Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984); Laurel Sand & Gravel, 519 F.3d at 162. Because the judgment in Redden I was entered in federal court, federal law is applied regarding *res judicata*.

   Authority from other jurisdictions is divided whether a dismissal on the basis of Eleventh Amendment immunity is a dismissal "on the merits" for *res judicata* purposes, depending on whether state law is applied. Under Maryland state law, a dismissal on the basis of sovereign immunity is entitled to *res judicata* effect. See Kutzik v. Young, 730 F.2d 149, 151 (4th Cir. 1984) (applying Maryland law) (citing Annapolis Urban Renewal Auth. v. Interlink, Inc., 43 Md. App. 286, 291-96, 405 A.2d 313, 316-19 (1979)). The law of some other states is to the same effect. See, e.g., Flores v. Edinburg Consol. Indep. Sch. Dist., 741 F.2d 773, 775 n.3 (5th Cir. 1984) (applying Texas law). However, a number of federal appellate courts have concluded that a dismissal based on Eleventh Amendment immunity is not a dismissal on the merits for *res judicata* purposes. See, e.g., Darlak v. Bobear, 814 F.2d 1055, 1064 (5th Cir. 1987); Lacks v. Fahmi, 623 F.2d 254, 256 (2nd Cir. 1980); see also Sterling v. United States, 85 F.3d 1225, 1230 n.3 (7th Cir. 1996) (Flaum, J., concurring). The confusion may arise because of the nature of sovereign immunity: it "has attributes of both subject-matter jurisdiction and personal jurisdiction," and "although Eleventh Amendment immunity is not strictly an issue of subject-matter jurisdiction, neither is it merely a defense to liability." Constantine v. Bd. of Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480-82 (4th Cir. 2005). The federal courts that have held that a dismissal on the basis of Eleventh Amendment immunity is not *res judicata* have reasoned that the Eleventh Amendment bars claims against states in federal courts, but not the states' own courts. Therefore, a dismissal based on Eleventh Amendment immunity in federal court should not prevent the plaintiff from pursuing his or her claim in a state court of competent jurisdiction. See, e.g., Darlak, 814 F.2d at 1064.

Finally, consideration of the third condition for application of *res judicata* requires that this lawsuit must involve "the same parties or their privies" as in Redden I. Obviously, the Plaintiff is the same in both actions. As for the defendants, the issue is more complex. Neither Jeff Sandy, Betsy Jividen, and Warden Martin, nor any of the individual Wexford past/present employees were named as parties in Redden I. It is well established that *res judicata* may bar a lawsuit against a defendant who is in privity with a defendant in an earlier lawsuit. However, "privity is an elusive concept." Martin v. Am. Bancorp. Retirement Plan, 407 F.3d 643, 651 (4th Cir. 2005). As the Fourth Circuit has indicated, "privity" is "'merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the *res judicata*.'" Id. (quoting Nash v. County Bd. of Educ. v. Biltmore Co., 640 F.3d 484, 494 (4th Cir. 1981)). Indeed, the Court has echoed WRIGHT & MILLER's recommendation "that the privity label either be discarded entirely or 'retained as no more than a convenient means of expressing conclusions that are supported by independent analysis.'" Martin, 407 F.3d at 651 n.16 (quoting 18A WRIGHT & MILLER, § 4448, at 327 (2nd ed. 2002)). Nevertheless, the Fourth Circuit has said: "[t]o be in privity with a party to a former litigation, the non-party must be 'so identified in interest with a party to former litigation that he represents precisely the same legal right in respect to the subject matter involved.'" Martin, 407 F.3d at 651 (citation omitted).

The Fourth Circuit recognizes three general "categories of non-parties who will be considered in privity with a party to the prior action and who will therefore be bound by a prior adjudication:" first, a "non-party who controls the original action;" second, a "successor-in-interest to a prior party;" and third, a "non-party whose interests were adequately represented by

a party to the original action," a narrow concept that the Fourth Circuit has also termed "virtual representation." Id. (citing Klugh v. United States, 818 F.2d 294 (4th Cir. 1987)).

In Andrews v. Daw, *supra*, 201 F.3d 521, the Fourth Circuit held that a "government employee in his official capacity is not in privity with himself in his individual capacity for purposes of *res judicata*." Id. at 523. In Andrews, the plaintiff's claims arose out of a traffic stop. He first sued the State of North Carolina ("N.C.") and the N.C. state highway patrolman who pulled him over, but only in the patrolman's official capacity. Andrews, 201 F.3d at 523-24. That suit was dismissed on the basis of Eleventh Amendment sovereign immunity. Id. Thereafter, the plaintiff brought suit a second time, solely against the patrolman in his individual capacity. Id. at 524. The district court dismissed the second suit based on *res judicata*; however, the Fourth Circuit reversed. Id. The Fourth Circuit endorsed § 36(2) of the Restatement (Second) of Judgments, which provides that a "'party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of *res judicata* in a subsequent action in which he appears in another capacity.'" Andrews, 201 F.3d at 525(quoting RESTATEMENT). In reasoning that is pertinent here, the Andrews court noted:

> While "[p]ersonal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and in essence are "suit[s] against the entity." Because the real party in interest in an official-capacity suit is the entity, a plaintiff can only recover damages from the entity itself, in contrast to a personal-capacity suit, in which a plaintiff can seek a judgment against the official's personal assets. Furthermore, different legal theories of liability are required for the plaintiff, and different defenses are available to the defendant, in a personal-capacity action than in an official-capacity action. These differences indicate that a government official in his official capacity does not represent "precisely the same legal right" as he does in his individual capacity.

Andrews, 201 F.3d at 525 (quoting Graham) (internal quotation marks omitted in Andrews). Other Circuits agree. "*Res judicata* does not apply when the parties appear in one action in a

representative capacity and in a subsequent action in an individual capacity." Howell Hydrocarbons, Inc. v. Adams, 897 F.2d 183, 188 (5th Cir. 1990). "Government employees in their individual capacities are not in privity with their government employer." Willner v. Budig, 848 F.2d 1032, 1034 n.2 (10th Cir. 1988); see also Conner v. Reinhard, 8427 F.2d 384, 395-96 (7th Cir. 1988); Headley v. Bacon, 828 F.2d 1272, 1279 (8th Cir. 1987) ("[L]itigation involving officials in their official capacity does not preclude relitigation in their personal capacity."); Roy v. City of Augusta, Maine, 712 F.2d 1517, 1521 – 22 (1st Cir. 1983). "A government official sued in his or her personal capacity, however, is not considered in privity with the government." Stancuna v. Sherman, 563 F. Supp. 2d 349, 353 (D. Conn. June 27, 2008) *quoting* Johnson v. County of Nassau, 480 F. Supp. 2d 581, 607 (E.D.N.Y. 2007); see also Kentucky v. Graham, 473 U.S. 159, 165 – 67 (1985).

In Brooks v. Arthur, 626 F.3d 194 (4th Cir. 2010), the Fourth Circuit reiterated its holding in Andrews, again rejecting a "transitive theory of capacities." Id. at 200. In reversing the district court's dismissal of § 1983 claims against the plaintiff's supervisors in their individual capacities, after the plaintiff's governmental employer had prevailed in a prior administrative proceeding, the Brooks Court held that Andrews controlled, even though there was "no material distinction between the theories of liability" in the court case and the administrative proceeding. Id. at 203. The Brooks court emphasized "the differences in the legal landscape when a defendant is sued in his individual—as opposed to his personal—capacity," id. at 203, stemming from the "legal fiction about individuals having two separate identities: one identity (or capacity) as an official representative of either the government or a corporation; and a separate identity (or capacity) as an individually autonomous human being." Id. at 201.

Here, however, as is often the case (unlike in <u>Redden I</u>), Plaintiff does not specify whether he intended to sue the Defendants in their individual or personal capacities.[21] **Consequently, the undersigned must review the Amended Complaint[22] and make a fair determination.** When a plaintiff does not specifically allege capacity, an examination of the nature of the plaintiff's claims, the relief sought, and the course of proceedings can determine whether a state official is being sued in a personal capacity. One factor indicating that suit has been filed in such a manner might be the plaintiff's failure to allege that the defendant acted in accordance with a governmental policy or custom, or the lack of indicia of such a policy or custom on the face of the complaint. See <u>Hill v. Shelander</u>, 924 F.2d 1370, 1374 (7th Cir. 1991) finding a personal capacity claim where "the unconstitutional conduct alleged involves [the defendant's] individual actions and nowhere alludes to an official policy or custom that would shield him from individual culpability"); <u>see also</u> <u>Conner</u>, 847 F.2d 384, 394 n.8 (7th Cir. 1988). Another indication that suit has been brought against a state actor personally may be whether the plaintiff has requested compensatory or punitive damages; such relief is unavailable in official capacity suits. <u>See</u>, e.g., <u>Shabazz v. Coughlin</u>, 852 F.2d 697, 700 (2nd Cir. 1988); <u>Pride v. Does</u>, 997 F.2d 712, 715 (10th Cir. 1993); <u>Price v. Akaka</u>, 928 F.2d 824, 828 (9th Cir. 1990); <u>Gregory v. Chehi</u>, 843 F.2d 111, 119-20 (3rd Cir. 1988); <u>Hill v. Shelander</u>, 924 F.2d 1370, 1374 (7th Cir. 1991).  Another relevant factor would be the nature of any defenses raised by the Defendants in response to the complaint. Because qualified immunity is available only in a personal capacity suit [see <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 (1985)],

---

[21] The undersigned notes the WVDOC Defendants' contention that they have been sued only in their official capacity. ECF No. 51 at 8.  The WVDOC Defendants are apparently relying on Plaintiff's having checked "yes" in the box on the court-approved form to indicate whether each defendant was acting under the authority or color of state law at the time the claims occurred. <u>See</u> ECF No. 17 at 3. This is not an indication of whether a claim is made in official vs. individual capacity, but merely a prerequisite for stating liability in a § 1983 action.

[22] As an initial point, Plaintiff's original complaint sought only declaratory and injunctive relief.  Subsequently, he filed the Amended Complaint, adding a claim for unspecified monetary damages.

an assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally. See Connor v. Reinhard, 847 F.2d 384, 394 (7th Cir. 1988); Lundgren v. McDaniel, 814 F.2d 600, 604 (11th Cir. 1987). Only after such inquiry can the plaintiff's intention to hold a defendant personally liable can be fairly ascertained.  Biggs v. Meadows, 66 F.3d 56, 61 (4th Cir. 1995).

Here, Plaintiff specifically alleges that the WVDOC defendants violated unspecified WVDOC policy and operational procedures. He also alleges that the Wexford defendants do not adhere to the "new standard of care" for HCV treatment, purportedly propounded by the FDA, CDC, and "American Liver Cancer Institute." Further, among other things, he seeks compensatory damages. Defendants have asserted the defenses qualified immunity, only applicable in a personal capacity suit, implying that Defendants interpreted Plaintiff's action as being against them personally. Accordingly, the undersigned will construe this action as one against the Defendants in both their official and individual capacities.

Redden I's named defendants were David Ballard, the former Warden of MOCC, Wexford Health Sources, Inc., and the WVDOC.  Here, Plaintiff sues Jeff Sandy, the Cabinet Secretary of the West Virginia Department of Military Affairs and Public Safety ("DMAPS"); Betsy Jividen, the Commissioner of the West Virginia Division of Corrections and Rehabilitation Services;[23] Michael Martin the Warden of HCC; and Wexford Health Sources, Inc. Therefore, Sandy, Jividen and Martin are all employees of DMAPS/WVDOC.

 Likewise, although ostensibly, Plaintiff only sued "Wexford Health Sources, Inc." in the previous suit, here, he again sues not only Wexford Health Sources, Inc., but also several of its

---

[23] The West Virginia Department of Corrections and Rehabilitation Services is one of the ten agencies that make up the DMAPS.  See West Virginia Department of Military Affairs and Public Safety, *available at*: https://dmaps.wv.gov/Pages/default.aspx

past and present employees: Kevin C. Halloran, a founder and until December 31, 2016, a former

president and chairman for Wexford [see Ebbitt Affidavit, ECF No. 73-2, ¶ 8 at 2]; G. Norman

McCann, one of Wexford's founders and its current Director, Secretary, and Treasurer [Ebbits

Affidavit, id., ¶ 3 at 1]; Kimberly Paton, the Wexford Health Services Administrator ("HSA")

at HCC; and two Wexford physician employees: Dr. Dina Paul and Dr. David Proctor. See

Ebbits Affidavit, ECF No. 73-2, ¶ 12 at 2.

Accordingly, it appears that Circuit precedent compels the conclusion that Defendants

Sandy, Jividen, and Martin are not in privity with the defendant WVDOC in Redden I, but

Defendants Halloran, McCann, Paul, Proctor, and Paton are in privity with Wexford in Redden

I. Therefore, it appears that Plaintiff's individual capacity claims against Sandy, Jividen, and

Martin[24] on his deliberate indifference claim regarding Harvoni for his HCV infection are not

subject to res judicata, notwithstanding the prior dismissal of Plaintiff's official capacity claims

against the WVDOC.  To the extent that the claims in Redden I were official capacity claims

against a state official or claims against a state agency (both of which, as Will teaches, are "no

different from a suit against the State itself," 491 U.S. at 71), Andrews and Brooks dictate that

plaintiff's individual capacity claims against these defendants are not barred. Nevertheless,

Plaintiff's claims against Sandy, Jividen, and Martin in their official capacities will be dismissed.

Sandy, Jividen, and Martin are all West Virginia state officials.[12] As noted, the claims against

them in their official capacities are the functional equivalent of claims against the State of West

---

[24] A plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself. Should the official die pending final resolution of a personal-capacity action, the plaintiff would have to pursue his action against the decedent's estate.  In an official-capacity action in federal court, death or replacement of the named official will result in automatic substitution of the official's successor in office.  See Fed.R.Civ.P. 25(d)(1). Here, Martin is no longer the warden at HCC, having been replaced by Tom Harlan - Interim Superintendent. The Clerk will be directed to correct the docket.

Virginia itself, as were the claims against the WVDOC and Warden Ballard in his official capacity in Redden I. See Will, *supra*, 491 U.S. at 71. Thus, the official capacity claims in this case are claims against the "same parties or their privies" as in Redden I, and are barred by *res judicata*.[25]

However, in Redden I, Wexford, a private corporation, as the contracted medical provider for WVDOC, a state agency, along with its individual employees (even though no Wexford employees were specifically named), were considered to be acting under color of state law, and were entitled to raise a qualified immunity defense, and to have the deliberate indifference standard applied to their conduct. West v. Atkins, 487 U.S. 42 (1998); Filarsky v. Delia, 566 U.S. 377, 393 – 94 (private parties compelled by the government to undertake duties that would otherwise be performed by a public official are entitled to raise a qualified immunity defense). Therefore, Wexford and past/present employees are protected here by *res judicata* from individual capacity claims against them in this suit.

Nonetheless, Plaintiff is correct that not all of the claims in his instant suit against all of the Defendants are subject to the *res judicata* bar. A careful read of Plaintiff's Amended Complaint confirms that he has also raised two new "subparts" to his original deliberate indifference claims, and at least one, and possibly two new claims, alleging that (1) the Wexford defendants failed to adhere to the most current treatment guidelines for HCV; (2) he is being "forced" to eat processed food which further damages his liver; (3) a First Amendment retaliation claim; and (4) a medical negligence claim.

---

[25] As previously noted, even if the official capacity claims were not subject to *res judicata*, they clearly are barred by the Eleventh Amendment and are not cognizable under § 1983.

However, as previously noted, under the second condition required to find *res judicata*, "[n]ewly articulated claims based on the same [transactional] nucleus of facts may still be subject to a *res judicata* finding if the claims could have been brought in the earlier action." Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 162 (4th Cir. 2008), *quoting* Tahoe Sierra Pres. Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d 1064, 1078 (9th Cir. 2003). "Under this transactional approach, *res judicata* will bar a 'newly articulated claim[]' if it is based on the same underlying transaction and could have been brought in the earlier action." Clodfelter v. Republic of Sudan, 720 F.3d 199, 210 (4th Cir. 2013). Further, "[u]nder the principles of claim preclusion, a final judgment on the merits in a prior action will absolutely bar the parties and their privies from litigating in a subsequent action issues actually litigated and issues that could have been raised in the first action." Briggs v. Newberry County Sch. Dist., 838 F.Supp. at 235 (citing Jaynes f. County of Fairfield, 303 S.C. 434 401 S.E.2d 183 (S.C. Ct. App. 1991) and Calvert v. Calvert, 287 S.C. 130, 336 S.E.2d 884 (S.C. Ct. App. 1985).

Therefore, even if it were not already barred by the expiration of the 2010 SOL and his failure to fully administratively exhaust it, Plaintiff's "forced" diet of processed food/denial of special HCV diet[26] claim is also barred by *res judicata*, because Plaintiff alleges it occurred at HCC "and other prisons [ECF No. 17 at 8], implying that it also occurred at MOCC, where he was incarcerated when he filed his original and amended complaints in Redden I; it arose out of the same common nucleus of facts as his original deliberate indifference claim and could have been raised previously.

---

[26] The undersigned notes that Plaintiff's Amended Complaint attaches the May 12, 2008 WVDOC Inmate Grievance Form in which an RN advised him that "[t]here is [sic] no specific dietary recommendations for Hepatitis C according to Dr. Proctor. If we can be of further assistance, kindly let us know." ECF No. 17-5 at 4.

Likewise, Plaintiff's claim that the Defendants fail to adhere to the most current guidelines for treating HCV[27] is likewise barred by *res judicata*, because it also arose out of the same common nucleus of facts alleged in <u>Redden I</u>, and could have been raised there, given that the FDA approved Harvoni on October 10, 2014; <u>Redden I</u> was filed on March 7, 2017; the CDC article Plaintiff attaches as purported proof of the CDC's "guideline" regarding HCV treatment was dated September 12, 2017; Plaintiff's Amended Complaint in <u>Redden I</u> was filed on November 30, 2017, and while it alleged that Plaintiff was told he did not meet Wexford's criteria to receive Harvoni, it made no mention of this very relevant and related claim.

Accordingly, Plaintiff's remaining deliberate indifference claims against the WVDOC Defendants, as well as his First Amendment and medical negligence claims against all the Defendants will be analyzed on their merits.

## B. <u>Deliberate Indifference to Serious Medical Needs</u>

Plaintiff contends that the WVDOC Defendants are liable to him under Section 1983 because they are "over" Wexford, who is not providing the "treatment of cure," Harvoni,  for his HCV, leaving him exposed to the virus, which can cause long-term and possibly fatal results, violating his constitutional right to effective medical assistance.[28]

To state a claim under the Eighth Amendment for ineffective medical assistance, Plaintiff must show that Defendants acted with deliberate indifference to his serious medical needs. <u>Estelle</u>

---

[27] Plaintiff has repeatedly urged this Court to find that the Defendants should adhere to the guidelines for HCV treatment propounded by the FDA, the CDC, and the "American Liver Cancer Institute."  As noted *supra*, the FDA approved Harvoni as treatment for chronic HCV infection on October 10, 2014; the CDC article Plaintiff attaches, referring generally to promising new treatments that may provide a cure for HCV (without specifically naming Harvoni or any other DAA drug, let alone what patients they should be prescribed for) is dated September 12, 2017. A Google search performed by the *pro se* law clerk ("PSLC") assigned to this case failed to locate any organization by the name of "American Liver Cancer Institute."

[28] Because Plaintiff's two new related "subpart" claims regarding the "forced" diet of processed foods and the failure to abide by the most recent guidelines are barred by *res judicata*, because they arise out of the common nucleus of facts as the "basic" deliberate indifference claim raised in Redden I, those claims will not be addressed.

v. Gamble, 429 U.S. 97, 104 (1976). Therefore, Plaintiff must first show that his medical condition is objectively serious. Then, he must demonstrate that Defendants "kn[ew] of and disregard[ed] an excessive risk to [his] health or safety." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). However, evidence establishing medical negligence or incompetence in the treatment of an inmate's condition does not constitute an excessive risk to the inmate's health or safety. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

**1) Defendants Sandy, Jividen, and Martin**

Liability under §1983 is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001)(internal citation omitted). Therefore, to establish liability under §1983, a plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2nd Cir. 1994); Colburn v. Upper Darby Twp., 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986).

As a preliminary matter, the Fourth Circuit has held that non-medical supervisory personnel may rely on the opinion of medical staff regarding the proper medical treatment of inmates. See Miltier v. Beorn, 896 F.2d 848, 855 (4th Cir. 1990); Shakka v. Smith, 71 F,3d 162, 167 (4th Cir. 1995).  Thus, to establish a claim of deliberate indifference against non-medical prison personnel, such as these WVDOC Defendants, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct.  Miltier, 896 F.2d at 853.

37

Here, Plaintiff has not made any credible claims that these Defendants were personally involved in the violation of his constitutional rights. Instead, it is apparent that Plaintiff names them in their official capacities as Cabinet Secretary of DMAPS, Commissioner of the WVDOC, and Warden of HCC. However, as noted in <u>Redden I</u>, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985) (citation and quotations omitted). Therefore, as held in <u>Redden I</u>, suits against state officials in their official capacities are treated as suits against the state. <u>Id</u>. at 166. Nonetheless, as noted *supra*, this claim against these Defendants in their official capacities is barred by *res judicata*.

There is no *respondeat superior* liability under §1983. <u>See Monell</u>, 436 U.S. at 691; <u>see also</u> <u>Vinnedge v. Gibbs</u>, 550 F. 2d 926, 928 (4th Cir. 1997). Instead, "liability will lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." <u>Vinnedge</u>, *supra.* Nonetheless, when a supervisor is not personally involved in the alleged wrongdoing, he may be liable under §1983 if a subordinate acts pursuant to an official policy or custom for which he is responsible. <u>Fisher v. Washington Metropolitan Area Transit Authority</u>, 690 F. 2d 1113 (4th Cir. 1982). Similarly, a supervisor may be liable under §1983 if the following elements are established:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

<u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir.), <u>cert. denied</u>, 513 U.S. 813 (1994).[29]

---

[29] "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an

Liberally construed, with respect to Sandy, Jividen, and Martin, Plaintiff's Amended Complaint appears to allege that they gave tacit authorization and/or had actual knowledge of inadequate medical care provided to him and failed to take corrective action. The undersigned finds that Plaintiff's claims against Sandy, Jividen, and Warden are improper. Plaintiff asserts no personal involvement on the part of any of these Defendants in the alleged violation of his constitutional rights. For example, Plaintiff does not assert that these Defendants ever treated him or were specifically involved in deciding or providing his medical care. To the contrary, Plaintiff attempts to establish liability by challenging Wexford's alleged policy of not treating all HCV-infected inmates with the new HCV treatment, purportedly because of its cost, a policy that he alleges these WVDOC Defendants enforced in their supervisory capacities. However, Plaintiff's claim is insufficiently pled and does not meet establish the prerequisites of supervisor liability: he has not shown that any WVDOC Defendant had actual or constructive knowledge that Wexford medical staff was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to him; or that any WVDOC Defendant's response to that knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of the alleged offensive practices, let alone that there was any 'affirmative causal link' between any WVDOC Defendant's inaction and a particular constitutional injury suffered by the Plaintiff.

Moreover, Plaintiff has attached documentation refuting his own claim: a response from Defendant Paton, HCC Health Services Administrator, confirming that "you state you already know that certain medical criteria must be met before treatment is approved for Hepatitis C;" advising that medical staff was monitoring his HCV, and that he should continue to keep the sick

---

unreasonable risk of harm or constitutional injury." Shaw, 13 F.3d at 799. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

call nurses advised of any change in his symptoms. See ECF No. 17-5 at 3. It is apparent that Plaintiff is being encouraged to seek care and supported in his efforts to do so, not that he is being hindered from obtaining medical care. Further, Plaintiff cannot show that he has any constitutional injury;[30] his claim is that he *might* develop an injury if his HCV worsens, not that there is any indication that it has already done so. To the contrary, although the current status of Plaintiff's HCV is unknown, because the records he produced end in 2018, attached to his Amended Complaint is a copy of a January 21, 2018 grievance in which he stated he was seeking "treatment of cure for Hep C," and admits that on or about January 15, 2018, Dr. Proctor told him his "numbers were not high enough (68) for the Harvoni treatment **and with my numbers being (68) I would not receive treatment [even] if I was on the streets . . . He said my number had to be (108) before I could get treated**."[31] ECF No. 17-5 at 2 (emphasis added).  Moreover, Plaintiff admits that the Wexford medical staff does treat some HCV-infected inmates, and has gotten "cures," [ECF No. 17-1 at 4  - 5] and that he has been repeatedly assured that his viral load levels are so low that they are nearly normal, and that he is being monitored regularly for any change. Id. at 3 – 4.  The copies of medical records Plaintiff filed in this case confirm that he is seen every six months in Chronic Care Clinic and has regular laboratory testing performed. See *generally* ECF No. 85-1.

---

[30] Defendants Sandy, Jividen, and Martin claim that they are entitled to qualified immunity. ECF No. 51 at 13 - 14. However, because the undersigned finds that Plaintiff did not suffer a constitutional injury, the issue of qualified immunity does not need to be addressed at this time.

[31] A Google search for treatment criteria to receive Harvoni, reveals that among other things, a patient must have a documented diagnosis of cirrhosis or a fibrosis level $\geq$ F3 in order to be approved for Harvoni.[31]   See Prior Authorization Criteria HARVONI® (ledipasvir/sofosbuvir) for Hepatitis C (HCV), *available at*:  < https://dhhr.wv.gov/bms/BMS%20Pharmacy/Documents/DUR/Dur%20Meetings%20agenda%20and%20attach/2015/052715/Harvoni%20Criteria%20v2015.2a.pdf > Plaintiff has not alleged that he suffers from either fibrosis or cirrhosis.

Despite Plaintiff's obvious insistence that these Defendants had a personal duty to ensure adequate care, the case law in this jurisdiction is that non-medical supervisory personnel are entitled to rely on the opinion of medical staff regarding the proper medical treatment of inmates. See Miltier, supra at 855. Accordingly, these Defendants were entitled to rely on the medical staff's decisions regarding Plaintiff's care. Further, to the extent that Plaintiff has asserted that any of these Defendants were deliberately indifferent to his needs by denying his administrative grievances, that claim is without merit because that is not the type of personal involvement required to state a claim under 442 U.S.C. § 1983. See Paige v. Kuprec, 2003 W.L. 23274357 *1 (D. Md. March 31, 2003).

Because Plaintiff fails to allege any credible personal involvement on the part of any of these Defendants, he does not make any allegations which reveal the presence of the required elements for supervisory liability and fails to state a claim upon which relief can be granted against them with respect to his medical care. Accordingly, with respect to his basic claim of deliberate indifference, the claims against Sandy, Jividen, and Martin should be dismissed.

Nevertheless, the undersigned finds that a careful review of the record of both Redden I and this case, even though Plaintiff has established that he suffers from HCV, an objectively serious medical condition, he has failed to establish that any Defendant in this case acted with deliberate indifference to his medical needs. It is apparent from the record in Redden I[32] that Plaintiff has been seen at a Chronic Care Clinic every six months for years; the record in this case

---

[32] "[A] federal court may consider matters of public record such as documents from prior . . . court proceedings in conjunction with a Rule 12(b)(6) motion." Walker v. Kelly, 589 F.3d 27, 139 (4th Cir. 2009); see also Brooks v. Arthur, 626 F.3d 194, 200 (4th Cir. 2010) ("'[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact.'") (citation omitted); Anderson v. FDIC, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (holding that a district court may "properly take judicial notice of its own records").

confirms that he is still receiving regular medical testing and monitoring of his liver function and HCV viral load.

Plaintiff's specific complaint is that he is not receiving the particular new HCV treatment he desires and that he is in "eminent [sic] danger" as a result.  However, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are generally not subject to judicial review.  Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975).  As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate.  Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977).

Finally, while Plaintiff has attached a copy of a September 5, 2018 letter from staff attorney Jason Parmar at Disability Rights of West Virginia[33] to Wexford Health Sources, Inc., in purported support of his claim that he should receive Harvoni, in the letter, Parmar notes that the group had received the copies of Plaintiff's medical records showing that he had chronic HCV, and states that '[m]y understanding of the lab work performed on January 26, 2018 is that Mr. Redden has a low viral load, and consequently he may benefit from treatment for hepatitis C." ECF No. 17-5 at 28. It is clear from the letter that Mr. Parmar is an attorney, not a physician who is qualified to give a medical opinion regarding treatment of Plaintiff's complex issue. Further, a physician would consider numerous variables before prescribing proper and effective treatment; moreover, treatment that might be appropriate for one patient may not necessarily be appropriate for another.

---

[33] The letterhead on the letters from Disability Rights that Plaintiff attached to his Amended Complaint refutes Plaintiff's later claim that Disability Rights is a "federal organization."  See ECF No. 69 at 15.

Because this deliberate indifference claim is being dismissed, there is no need to undertake further analysis of Plaintiff's <u>Hoffer</u> claim. Further, the undersigned recommends that Plaintiff's requests for declaratory and injunctive relief in connection with this claim be denied.

## 2) **Retaliation**

Next, Plaintiff claims that the WVDOC staff and Wexford [ECF No. 17 at 8; ECF No. 71 at 12] violated his First Amendment rights by retaliating against him, by moving him from MOCC to HCC to remove him from the jurisdiction of the United States District Court in the Southern District of West Virginia [ECF No. 17-1 at 7]; by denying appropriate treatment for his HCV, thereby causing further damage to his liver; and moving him from "prison to prison to delay and further damage . . . [his] liver[.]" ECF No. 17 at 8.

In his responses in opposition, he raises a new allegation regarding this claim, arguing that Defendants' counsel in <u>Redden I</u> also wrongfully retaliated against him by moving to dismiss that case. ECF No. ECF No. 69 at 11; ECF No. 70 at 4; ECF No. 71 at 3; ECF No. 72 at 8; ECF No. 81 at 4. Among other things, he seeks a protective order, preventing the WVDOC and Wexford Defendants from retaliating against him for filing suit over this issue. ECF No. 17 at 9.

Liberally construed, it appears that Plaintiff is attempting to allege that Defendant Sandy, as the Cabinet Secretary of DMAPS, Defendant Jividen, as the Commissioner of the WVDOC, and Defendant Martin, as the Warden of HCC, along with Wexford, retaliated against him by transferring him from MOCC to HCC, to deliberately impede the progress of his lawsuit(s) regarding treatment of his HCV. However, even if true, these "acts of retaliation" do not state a constitutional violation.

As an initial point, as Defendants Sandy, Jividen, and Martin have noted in their memorandum in support of their dispositive motion, Plaintiff's claim in this regard is merely a

conclusory allegation which fails to identify with any specificity which, if any, of these Defendants were involved in the decision to transfer him from MOCC to HCC. ECF No. 51 at 15. Second, the WVDOC Defendants contend that Warden Martin has no power to order a transfer of any inmate from one facility to another. Id.  Further, neither Wexford nor any of its employees have any role in deciding in what facility an inmate should be housed, and Plaintiff has not pled any facts to show that they did, or that they engaged in any retaliatory action against him.

The First Amendment protects the right to be free from government abridgment of speech. "It is well settled that state officials may not retaliate against an inmate for exercising his constitutional rights, including his right to access the courts." Ebersole v. Conover, No. 7:08cv00503, 2010 U.S. Dist. LEXIS 95120, 2010 WL 3629581, at *10 (W.D. Va. Aug. 27, 2010), report and recommendation adopted, No. 7:08cv00503, 2010 U.S. Dist. LEXIS 95078, 2010 WL 3585833 (W.D. Va. Sept. 13, 2010) (citing Am. Civil Liberties Union v. Wicomico Cnty, 999 F.2d 780, 785 (4th Cir. 1993)). However, "bare assertions of retaliation do not establish a claim of constitutional dimension." Boblett v. Angelone, 942 F.Supp. 251, 254 (W.D. Va. 1996), aff'd, 121 F.3d 697 (4th Cir. 1997) (citing Adams v. Rice, 40 F3.d 72 (4th C. 1994). Generally in this circuit, inmates' claims of retaliation are "treated with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (quoting Adams, 40 F.3d at 74 (4th Cir. 1994)). Therefore, to state a prima facie case of retaliation, Plaintiff must present concrete facts corroborating the claim. Here, Plaintiff offers no facts to support his allegation of retaliation, only conclusory allegations, nor does he identify a particular person or persons who purportedly ordered his transfer from MOCC to HCC for allegedly retaliatory reasons.

Finally, both statutory and common law provide prison officials with broad discretion over an inmate's ""location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges" Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991); see also, W.Va. Code § 25-1-1, *et seq*. A change in the location or condition of a prisoner's confinement that does not exceed the scope of the original sentence gives rise to a constitutional claim only if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995); see also Slezak v. Evatt, 21 F.3d 590, 594 (4th Cir. 1994) ("The federal constitution itself vests no liberty interest in inmates in retaining or receiving any particular security or custody status '[a]s long as the [challenged] conditions or degree of confinement ... is within the sentence imposed ... and is not otherwise violative of the Constitution.'") (citation omitted). As a general rule, discretion to transfer prisoners "in a wide variety of circumstances is vested in prison authorities." Meachum v. Fano, 427 U.S. 215 (1976). Accordingly, Plaintiff cannot assert that any right is violated if the WVDOC makes a decision to transfer him to another facility because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose." Id. at 225.  Plaintiff simply had no constitutional right to remain in any particular prison, Gaston, 946 F.3d at 344, and he has failed to state a plausible claim that his transfer from MOCC to HCC was motivated by retaliation or any other unconstitutional reason.

Therefore, the undersigned finds that Plaintiff has failed to state a plausible First Amendment claim of retaliation, and this claim, along with Plaintiff's request for a protective order to prevent the WVDOC and Wexford Defendants from retaliating against him for filing suit over this issue, should be denied.[34]

---

[34] A review of Plaintiff's previous filings on PACER reveals that although he has not yet accumulated any strikes under the Three Strikes Rule, he has a documented pattern of filing frivolous motions in closed cases, sometimes for

### 3) **Medical Negligence**

To the extent that Plaintiff may be seeking to establish a medical negligence claim against Wexford, its doctors, and/or other any other staff, medical or otherwise, or any WVDOC personnel, for not providing him Harvoni treatment for his HCV, the same is not cognizable under the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 105-106 (1976).  Moreover, even if such a claim were cognizable under § 1983, in order to sustain such a claim, Plaintiff would have had to comply with West Virginia law and establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

Further, when a medical negligence claim involves an assessment of whether or not a plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000). Despite Plaintiff's claims to the contrary, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code § 55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6**. Prerequisites for filing an action against a health care provider; procedures; sanctions.

---

as long as a decade after dismissal of the case.  In one of these cases, Case No. 5:05cv389 in the Southern District of West Virginia, the court noted: "[w]ith regard to Plaintiff's continuing filings of frivolous letter-form motions in this closed matter, Plaintiff is wasting the Court's scarce judicial resources.  Therefore, all future submissions from him in this case must be previewed to determine whether or not they may be filed with the Court. In particular, the Clerk shall receive-stamp all such submissions and then forward those documents to the undersigned for a merits preview. In the event that the submission is found potentially to have merit, it will be filed and disposed of by the Court in due course.  In the event that the document is found to be without merit, the same will be returned, without comment, to Plaintiff." Redden v. Warden, Case No. 5:05cv389, ECF No. 197 (S.D. W.Va. Sep. 26, 2018).

(a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.

(b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the Rules of Civil Procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatary prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp. 2d 805, 806-807 (N.D. W.Va. 2004).

With regard to the appropriate standard of care, Plaintiff has not sustained his burden of proof. Plaintiff does not assert, much less establish, the standard of care for HCV. Further, even if such a claim were cognizable in a § 1983 action, this is not a case of alleged malpractice so obvious that it entitles Plaintiff to the common knowledge exception of W.Va. Code § 55-7B-6(c). Thus, any possible medical negligence claim must be dismissed without prejudice.

## VI. **RECOMMENDATION**

For the foregoing reasons, it is hereby **RECOMMENDED** that Defendants' Motions to Dismiss [ECF Nos. 34, 50, 58, 62, 73] be **GRANTED** and that the claims in the Amended

Complaint [ECF No. 17], with the exception of the medical negligence claim, be **DISMISSED with prejudice.**  Plaintiff's medical negligence claim should be **DISMISSED without prejudice.**

Further, the undersigned **RECOMMENDS** that Defendants Wexford, Halloran, McCann, Paul, Proctor, and Paton's pending Motion to Strike [ECF No. 84] be **GRANTED.**

The Clerk of Court is **DIRECTED** to correct the names of certain defendants on the docket: **"**Micheal Martin" should be spelled "Michael Martin," but because Martin is no longer the Warden at HCC, Tom Harlan, the Interim Superintendent at HCC, should be substituted for Martin; "Dr. Paul's" full name is "Dina Paul, M.D.;" "Dr. Proctor's" full name is "David Proctor, D.O.;" and the correct spelling of "Kimberly Patten's" name is "Kimberly Paton."

The parties are notified that this Report and Recommendation is hereby **FILED**, and a copy will be submitted to United States District Judge Thomas S. Kleeh.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rules 6(d) and 72(b), Federal Rules of Civil Procedure, and Rules 1(b) and 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2254 of Title 28, United States Code, **any party shall have fourteen days from the date of service of this Report and Recommendation within which to file with the Clerk of this Court**, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.**  Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12. Extension of this time period may be granted by the presiding District Judge for good cause shown.

**Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of**

**Appeals.** <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985);

<u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.

1984).  A copy of such objections shall be served on Judge Kleeh.

      The Clerk is directed to provide a copy of this Report and Recommendation to the Plaintiff

by certified mail, return receipt requested, at his last known address as reflected on the docket, and

to transmit a copy electronically to all counsel of record.

      This Report and Recommendation completes the referral from the district court.  The Clerk

is directed to terminate the Magistrate Judge's association with this case.

DATE: February 5, 2020

        /s/ *Michael John Aloi*_____

        MICHAEL JOHN ALOI
        UNITED STATES MAGISTRATE JUDGE